OPINION
{¶ 1} Appellant, Rashad Martin ("appellant"), filed this appeal seeking reversal of a judgment by the Franklin County Court of Common Pleas convicting him of felonious assault with a gun specification and having a weapon while under disability.
 {¶ 2} Some time after midnight on June 16, 2005, members of the Columbus Police Department ("CPD") were assisting the Westerville Police Department in executing an arrest warrant in the area near Barnett Road in Columbus, Ohio. As part of this operation, Officer Oscar Singer of the CPD SWAT team was conducting surveillance from an unmarked vehicle parked in an alley behind an apartment building at 449 Barnett Road.[1] The vehicle's side and rear windows were tinted, and Officer Singer was sitting in the back seat to avoid notice.
 {¶ 3} During the time Officer Singer was parked there, two individuals were outside the apartment building, but were not paying attention to the vehicle. After approximately two hours, a red Camaro pulled up to the apartment building, and two individuals got out of the Camaro and joined the two individuals outside the apartment building. Officer Singer heard one of the individuals ask, "[w]hose car is that?" in reference to Officer Singer's vehicle. The individuals then began to look into Officer Singer's vehicle, and one of them said, "[t]here is somebody in the car." Officer Singer knew he had been noticed and climbed into the front seat of the vehicle. At that point, Officer Singer heard a distinctive sound he identified as the slide of an automatic weapon.
 {¶ 4} Officer Singer started the vehicle, rolled down the window and identified himself as "five-o," a slang term for a police officer. Officer Singer then told the individuals, "You respect my shit and I will respect yours." Officer Singer then backed the vehicle out of its parking spot, watching the individuals the whole time. Officer Singer described the person holding the gun as wearing a white T-shirt or sweatshirt, gray sweatpants, and with braided hair. Officer Singer then began to drive down the alley.
 {¶ 5} As Officer Singer drove away, he used the two-way feature of his mobile phone to tell the other officers on the operation that he had just had "an interesting conversation." Before he could provide further details, Officer Singer heard the sound of gunshots being fired. One of the shots hit the rear of Officer Singer's vehicle near the rear brake light, passed through the trunk and back seat of the vehicle, and lodged in the back of the driver's seat. Officer Singer then radioed the other officers to tell them shots had been fired at him, and then turned around to return to the scene.
 {¶ 6} Officer Ronald Moss was part of the surveillance operation as well. He testified that he was driving toward the scene to meet Officer Singer when he heard the gunshots. Officer Moss turned into the alley and saw an individual holding a gun standing in the alley. The individual turned, saw Officer Moss' vehicle approaching, and ran away. Officer Moss parked his vehicle and began to chase the individual with the gun. He saw two other individuals standing near a tree line, ordered them to the ground, and continued his chase. As he approached the apartment building, Officer Moss heard the windows of the building shaking, and concluded this had been caused by someone entering one of the apartments and slamming the door.
 {¶ 7} By the time Officer Singer returned, three of the four individuals had already been apprehended. Officer Singer did not recognize any of the three as the individual he had seen holding the gun, and identified two of the three as Victor Bivens ("Bivens") and James Harriston ("Harriston"). Officer Singer joined Officer Moss and Sergeant Robert Reffitt in commencing a search of the apartments in the building. While searching Apartment C with the owner's consent, the officers entered one of the bedrooms and saw the figure of someone lying in bed under the sheets. The officers pulled the sheets back and found appellant, wearing a white T-shirt and boxer shorts. Appellant's pants were found under the mattress. In the other bedroom's closet, the officers found a shotgun and a nine-millimeter handgun. The handgun's hammer was cocked back, meaning it had been fired.
 {¶ 8} A search of the area behind the apartment building revealed a number of shell casings, including two from a nine-millimeter handgun. Testing showed that the handgun found in the closet of the apartment matched the bullet pulled from the driver's seat of Officer Singer's vehicle and the twonine-millimeter shell casings found outside the apartment building. A test conducted on appellant's hands was indicative of gunshot residue on both hands. None of the other individuals who were with appellant were tested for gunshot residue.
 {¶ 9} When initially questioned by investigators, appellant denied having been outside that night and claimed he did not touch the gun and did not know who fired at Officer Singer's vehicle. Appellant claimed the gunshot residue was on his hands because he was playing with fireworks earlier that night. When he testified at trial, appellant admitted he had lied to the officers during his initial questioning, claiming he did so because he was afraid of Bivens, who appellant claimed was the individual who actually fired the shots. In his testimony at trial, appellant stated that Bivens fired at Officer Singer's vehicle and appellant, in a panic, grabbed the gun from Bivens. Appellant claimed the gun was jammed, and in an effort to "decock" the gun, appellant accidentally fired another round into the ground. Appellant then stated he ran into Harriston's apartment, threw the gun into the closet, and then went into the other bedroom and sat on the bed until the officers entered. Appellant denied hiding under the covers, and specifically stated that Officer Singer told the other officers appellant was not the shooter, a claim Officer Singer denied in his testimony.
 {¶ 10} After hearing all the evidence, a jury convicted appellant on the charge of felonious assault with gun specification. The court then convicted appellant on the charge of having a weapon while under disability.
 {¶ 11} Appellant filed this appeal, alleging the following four assignments of error:
 ASSIGNMENT OF ERROR NO. 1:
 A CRIMINAL DEFENDANT IN A CIRCUMSTANTIAL EVIDENCE CASE DOES NOT RECEIVE A FAIR AND IMPARTIAL TRIAL WHERE A POLICE OFFICER TESTIFYING UNDER OATH STATES THAT HE IS SURE THAT THE DEFENDANT ON TRIAL FOR SHOOTING AT A POLICE OFFICER IS THE SHOOTER.
 ASSIGNMENT OF ERROR NO. 2:
 THE STATE OF OHIO VIOLATED APPELLANT RASHAD MARTIN'S DUE PROCESS RIGHTS WHEN IT FAILED TO PRESERVE MATERIAL EVIDENCE BY NOT PERFORMING TIMELY GUN SHOT (sic) RESIDUE TESTS UPON A POTENTIAL PRINCIPAL IN THE CRIME.
 ASSIGNMENT OF ERROR NO. 3:
 A CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE, IN A CIRCUMSTANTIAL EVIDENCE CASE WHERE THERE ARE NO EYEWITNESSES, AND FOUR SUSPECTS RUN IN DIFFERENT DIRECTIONS AFTER A SHOOTING (sic).
 ASSIGNMENT OF ERROR NO. 4:
 A CRIMINAL DEFENDANT IS DENIED HIS CONSTITUTIONAL TO RIGHT EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL THROUGH COUNSEL'S FAILURE TO REQUEST AN `OTHER ACTS' LIMITING INSTRUCTION, AND THE COURT'S FAILURE TO PROVIDE THE JURY WITH THIS INSTRUCTION.
 {¶ 12} Appellant's first assignment of error refers to testimony by Detective Robert Wachalec, a detective with CPD's assault squad, who was the lead investigator on the case. Detective Wachalec was called as a witness by appellant. On direct examination, appellant's counsel asked Detective Wachalec whether he had conducted gunshot residue tests on anyone other than appellant, to which Detective Wachalec responded that he had not conducted any other such tests. On cross-examination in response to a question from the prosecution, Detective Wachalec explained that he conducted no other tests because he was "pretty sure" appellant was the shooter.[2] The trial court immediately instructed the jury that Detective Wachalec's statement could only be used for the purpose of explaining actions Detective Wachalec took or declined to take, and was irrelevant and could not be considered for any other purpose. The trial court then reiterated this instruction in the final instructions given to the jury.
 {¶ 13} It is clear that appellant "opened the door" to this line of questioning by calling Detective Wachalec as a witness and asking him if he had conducted gunshot residue tests on any of the other individuals at the scene. Furthermore, the trial court's timely instruction to the jury not to consider Detective Wachalec's statement as evidence of appellant's guilt, and the trial court's reiteration of that instruction in the final instructions was sufficient to ensure that the jury would not make improper use of the testimony. It must be presumed that a jury obeys the instructions of a trial court. State v. Hancock (2006),108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, citing State v.Ahmed (2004), 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637. Therefore, appellant's first assignment of error is overruled.
 {¶ 14} In his second assignment of error, appellant argues that the failure of the investigating officers to conduct gunshot residue tests on anyone other than appellant constituted a failure to preserve exculpatory evidence that deprived appellant of his right to due process. Appellant failed to raise this issue in the trial court, and therefore waived all but plain error. State v. Coley (2001),93 Ohio St.3d 253, 2001-Ohio-1340, 754 N.E.2d 1129. While framed as a question of whether CPD failed to preserve exculpatory evidence, the issue is actually whether appellant's right to due process was violated by CPD's failure to use a particular investigatory tool. See State v.Wooten, Athens App. No. 01CA31, 2002-Ohio-1466.
 {¶ 15} The right to due process is not violated when investigators fail to use a particular investigatory tool. Arizona v. Youngblood
(1988), 488 U.S. 51, 102 L.Ed.2d 281, 109 S.Ct. 333. Furthermore, even if appellant's argument were properly framed as an issue of failing to preserve exculpatory evidence, the right to due process is not violated unless it can be shown that the investigators were acting in bad faith in failing to preserve evidence. Id. at 58. In this case, there is no evidence that CPD investigators were acting in bad faith in their belief that appellant was the shooter, and that gunshot residue tests on the other individuals were unnecessary.
 {¶ 16} We find no constitutional error in CPD's failure to conduct other gunshot residue tests. Therefore, appellant's second assignment of error is overruled.
 {¶ 17} In his third assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. SeeState v. DeHass (1967), 10 Ohio St.2d 230, 39 O.O.2d 366,227 N.E.2d 212, at ¶ 1 of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 18} Appellant argues that the jury could not reasonably have convicted him because this is a circumstantial evidence case where no witness testified to seeing appellant fire the shot that struck Officer Singer's vehicle. Appellant further argues that investigators identified appellant as the shooter based solely on the fact that appellant was left holding the gun after the shooting. Thus, appellant characterizes the chances of appellant being the shooter as 25 percent, since appellant was only one of four individuals in the alley at the time the shots were fired.
 {¶ 19} However, this characterization ignores a great deal of evidence that pointed to appellant as the shooter. Officer Singer testified that the person he saw holding a gun before he drove away was wearing a white T-shirt and had braided hair, a description that matched appellant. The gun that fired the bullet extracted from the driver's seat of Officer Singer's vehicle was found in a closet in the bedroom next to the room in which the officers testified they found appellant hiding under the covers. In his testimony, appellant admitted he lied to investigators during his initial interview, which could have been used by the jury as a reasonable inference of consciousness of guilt.
 {¶ 20} The jury was in the best position to evaluate the credibility of the witnesses and to determine whether they believed the testimony of the CPD officers over appellant's claim that he grabbed the gun from the real shooter and accidentally fired the shot that resulted in the gunshot residue being found on his hands. We cannot say the jury lost its way in convicting appellant. Therefore, appellant's third assignment of error is overruled.
 {¶ 21} In his fourth assignment of error, appellant argues he was deprived of his right to effective assistance of counsel by his trial counsel's failure to address evidence implicating appellant in prior bad acts by not requesting the court to issue a limiting instruction. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel's performancefell below an objective level of reasonable representation and that the defendant suffered prejudice as a result. Strickland v. Washington (1984),466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
 {¶ 22} The evidence to which appellant refers was evidence regarding a shotgun found in the apartment where appellant was hiding, a handgun and a knife that were found near the apartment building, and shells matching weapons other than the nine-millimeter handgun that were found at the scene. The trial court questioned counsel about introduction of other shells found at the scene. Counsel stated that he wanted to introduce them as evidence regarding the number of shots that were fired during the incident.[3] Trial counsel objected to introduction of testimony about the other weapons found inside and outside the apartment. The trial court immediately instructed the jury that the other weapons could only be considered as evidence that CPD conducted a thorough search of the area, and not as evidence of appellant's guilt.
 {¶ 23} Given this, we cannot say either that trial counsel's conduct fell below an objective standard of reasonable representation, or that appellant suffered any prejudice. Consequently, appellant's fourth assignment of error is overruled.
 {¶ 24} Having overruled each of appellant's assignments of error, the trial court's judgment convicting appellant is affirmed.
Judgment affirmed.
FRENCH and McGRATH, JJ., concur.
[1] The arrest warrant was not being served at this address.
[2] Upon further questioning by appellant's counsel, Detective Wachalec amended this answer to state that he was "sure" appellant had fired the shots.
[3] The testimony showed that two shell casings from the nine-millimeter handgun were found, but the testimony from the officers regarding the number of shots fired varied.